Law Offices of
DENA MARIE YOUNG (CSB #215344)
2751 4th Street, PMB #136
Santa Rosa, CA 95405
Telephone: (707) 528-9479
Facsimile: (707) 692-5314
Email: dmyounglaw@gmail.com

Attorney for Defendant
JAVIER CASTRO BANEGAS-MEDINA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-22-00076 YGR |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| JAVIER CASTRO BANEGAS-MEDINA, | Date: December 8, 2022 |
| Defendant. | Time: 2:00 p.m. |

Defendant JAVIER CASTRO BANEGAS-MEDINA, by and through his counsel of record, Dena Marie Young, hereby submits his Sentencing Memorandum.

**INTRODUCTION**

On July 28, 2022, Mr. Banegas-Medina entered a plea of guilty to conspiracy to distribute and possession with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(vi).

The plea agreement, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, anticipated an adjusted offense level of 35. Combined with a criminal history category of II, the resulting guidelines range is 188-235 months imprisonment. The plea

agreement also contemplates a 2- level reduction for global disposition pursuant to § 5K2.0(a)(2)(B) if all conditions are met, this would result in a total offense level of 33 and a guidelines range of 151-188 months imprisonment.

For the reasons discussed below, Mr. Banegas-Medina requests that this Court impose a custodial sentence no greater than 72 months. Such a sentence would be a sufficient sentence within the meaning of *Gall v. United States*, 552 U.S. 38 (2007), and is consistent with the factors set out in 18 U.S.C. § 3553(a).

## I.

## OBJECTIONS TO THE PRESENTENCE REPORT

Mr. Banegas-Medina has no objection to the guidelines and criminal history calculations set forth in the presentence report.

Counsel for Mr. Banegas-Medina does object to the inclusion of Judicial Sentencing Information (JSIN) data in the presentence report as it is misleading and of low statistical value. The pool of "comparable" cases (15 defendants) is too small to be statistically meaningful.

Further, the methodology used in generating this information causes the data to be skewed in favor of a higher sentencing range than is actually imposed. For example, the pool of defendants to which Mr. Banegas-Medina is being compared include defendants who received life sentences, a sentence for which Mr. Banegas-Medina is not eligible. An unknown number of these "comparable" defendants were likely subject to a 10-year mandatory minimum, rather than the 5-year mandatory minimum which applies here. The effect of mandatory minimum sentencing is to skew the average sentencing range higher overall. Nor can the magnitude of this effect be assessed based on the data presented. Similarly, the exclusion of defendants who were granted § 5K1.1 departures (and who presumably received lower sentences) skews the overall sentencing range higher than it is in reality.

The inclusion of JSIN data as presented serves only to reinforce the guideline sentencing and to suggest that the calculated average sentence is appropriate in all cases. It does not take into account factors under 18 U.S.C. § 3553(a) which differentiate individuals from one another. It is therefore, not appropriate to include this information in a presentence report.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**II**.

**THIS COURT SHOULD IMPOSE A SENTENCE NO GREATER THAN 72 MONTHS BECAUSE IT IS A SUFFICIENT SENTENCE CONSIDERING THE FACTORS SET OUT IN 18 U.S.C. § 3553(A).**

While the guidelines must be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence. *United States v. Carty*, 520 F.3d 984, 992 (9th Cir.2008).  Sentencing courts must give "meaningful consideration" to all of the statutory factors in 18 U.S.C. §3553(a).  Section 3553(a) clearly states that a court must impose a sentence that is "sufficient but not greater than necessary to comply with the purposes of sentencing.  This requirement is often referred to as 'the parsimony provision," and the Supreme Court has referred to it as the "overarching instruction" of 18 U.S.C. §3553(a). See *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the offender's conduct is part of the sentencing equation, it is not the totality of it, and the sentencing court must not focus on the offense at the expense of the individual offender. *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Ameline*, 409 F.3d 1073 (9th Cir.2005)(*en banc*). The sentence must be long enough to reflect the seriousness of the offense, provide for just punishment and promote respect for the law.  Further, it should afford adequate deterrence to criminal conduct in general and protect the public. It must be "sufficient but not greater than necessary" to reflect societal concerns and individual considerations.

Here, Mr. Banegas-Medina waived Indictment.  He fully accepted responsibility for his conduct with his guilty plea.  He faces a five-year mandatory minimum sentence with much higher guidelines based primarily on the quantity of drugs found in his possession and on his "leadership" role in the organization. While the application of the Sentencing Guidelines is not in dispute, these guidelines do not adequately account for the circumstances under which the offense was committed.  Counsel for Mr. Banegas-Medina believes that a term no greater than 72 months is a substantial sentence under the circumstances and is sufficient to comply with the purposes of sentencing.

### III.

### EVALUATION

Mr. Banegas-Medina grew up in rural Honduras, where poverty was the norm.  He, his mother, and his siblings lived in a one-bedroom home without electricity or running water.  His parents were separated, but he continued to see his father on a regular basis.  He left school after completing the 5th grade.  By the age of 14, he was working to help support himself and his family.  Although he was not exposed to violence in his home, violence was common in the community.  His father-in-law and his brother-in-law were both killed.

Mr. Banegas-Medina has been in a stable relationship with Christina Gamez for about 19 years.  They have five children together, aged 2 – 16.  Two of the children remain in Honduras with Ms. Gamez' mother.  The remainder are with Ms. Gamez in Oakland.   Mr. Banegas-Medina understands that he will be deported.  He does not know whether Ms. Gamez will choose to stay in the United States or return to Honduras.

Mr. Banegas-Medina came to the United States seeking greater employment opportunities, not just for himself, but to assist his family.  Mr. Banegas-Medina tried to assist his mother-in-law and his older children financially by sending them money when he was able to find work in the United States.  He is very concerned that he can no longer assist them while he is in custody.

Unfortunately, life in the United States did not prove to be everything that Mr. Banegas-Medina hoped it would be.  The cost of living here was very high.  His work opportunities were limited by his lack of education, his limited English skills, and his lack of proper immigration documents.  He did work as a day laborer when he could.  The pandemic made even that nearly impossible.

Although his use of drugs and alcohol was social in nature, Mr. Banegas-Medina has had his own challenges with drug use.  He, himself, was hospitalized for an overdose of fentanyl in 2018 when he ingested a drug his friends told him was cocaine when it turned out not to be.  As a result of this experience, Mr. Banegas-Medina never disguised the drugs he sold as anything other than fentanyl, nor did he use it to lace other drugs.

Mr. Banegas-Medina accepted responsibility for maintaining a premises for distribution of drugs.  He lived in the Oakland home where the majority of the fentanyl was found hidden in a fencepost where it could not be accessed by children who also lived in the home.  He also accepted responsibility for a leadership role in the organization in which he made arrangements for the sales of fentanyl largely by phone and employed two runners to help with deliveries. Some of the people to whom he sold redistributed the fentanyl, but whether they did so was not within his control.  Although Mr. Banegas-Medina was a leader with respect to this case, he is not the source of the drugs, and would not be considered a high-level player in the overall organization.

In addition to poverty, living conditions in rural Honduras are impacted by cartels.  This environment of violence leaves families under threat and creates further pressure on immigrants like Mr. Banegas-Medina to sell drugs in order to protect themselves and their families. Mr. Banegas-Medina lost his father-in-law and brother-in law to this violence.

A sentence of 72 months is a substantial sentence for Mr. Banegas-Medina.  It reflects a sentence above the mandatory minimum in recognition of his greater role in the organization. Mr. Banegas-Medina has never before served a sentence of more than 212 days.  A sentence of 72 months is more than sufficient to deter him from committing crimes in the future.  His punishment is greater than the time of incarceration alone.  He is unable to assist his family in Honduras while he is incarcerated, and he is missing important aspects of his children's young lives.  He understands that he can never return to the United States without subjecting himself to even greater punishment.

Mr. Banegas-Medina has no legal status in the United States.  He will likely be deported upon completion of his sentence.  Because of his immigration status, he will be restricted from participating in BOP programing which might otherwise have allowed him to earn reduced custody time.  His participation in programming will be further limited by his limited ability to speak and read in English.  In short, he will be warehoused longer than a similarly situated citizen prisoner and will be less able to improve himself through his incarceration.

## CONCLUSION

For the foregoing reasons, Mr. Banegas-Medina respectfully requests that this Court impose a custodial sentence no greater than 72 months. This sentence is sufficient under the circumstances to punish him for his conduct, and to deter such conduct in the future.

Mr. Banegas-Medina further requests that this Court recommend that he be placed at a Bureau of Prisons facility as close as possible to the San Francisco Bay Area so that he can maintain contact with his family in Oakland.


Dated: December 1, 2022                    Respectfully Submitted,

                                           ___/s /_____
                                           DENA MARIE YOUNG

                                           Attorney for Defendant
                                           JAVIER CASTRO BANEGAS-MEDINA